This is a bill by complainant against the children of her deceased husband in aid of dower. The facts, briefly, are these: In 1908 August Wildeman was the owner of land on Fifteenth avenue, in the city of Newark. He apparently did not have the legal title in his name. It was conveyed to one Hedwig Kraus in 1909, and the evidence shows that it was taken in her name to prevent the dower of his then wife, Helen, from attaching. All the children living at home were under the age of twenty-one years except Walter. The moneys for the erection of these buildings were those of August Wildeman, although Walter says that he helped in a financial way. He, however, did not give any specific item of expenditure or show any payment of money. Under these circumstances, there could have been no trust *Page 110 
in his favor. A resulting trust arises at the time of the conveyance. Hedwig Kraus held title to the land until 1910, when she conveyed it to Walter Wildeman.
There is in evidence a paper dated August 5th, 1910, two days after the deed to him was recorded, in which he appoints his father his agent to rent and lease the property, collect rent, and agrees to convey the property to such person as August Wildeman directs, and to give deeds therefor.
This, it seems to me, proves that August was the beneficial owner, and that the paper in evidence is a declaration of trust in his favor.
Walter continued to hold the legal title until March 5th, 1923, when he conveyed it to one Baney, a stenographer, who reconveyed to August for life, and remainder to his children. During all of this time August collected the rents, assumed control of the property, acted as its owner, paid water bills, tax bills, interest on mortgage and repair bills; also signed leases; and finally ejected his son, Walter, from the premises in which Walter was living and paying rent to his father. In 1913 Walter conveyed a portion of the property, called the garage property, to Elvira L. Curtis, now Elvira Wildeman, the complainant herein.
She says that it was conveyed because she had agreed to marry August when he was free; and a letter of his, which she says was written prior to her return to his household, was introduced in evidence, in which he said, "I want to give you the deed for the garage so you have something to remember me after I am gone."
In 1914 she reconveyed the garage to August because, as she said, she had broken her engagement and ought not to retain the property. The deed remained unrecorded until March 5th, 1923, when it was put on record, and then August conveyed that property to the stenographer, who, in turn, made the conveyance back to August for life; the remainder to his children, as above stated.
Walter admits that his father urged him to reconvey the property to him. He advanced three theories for this conveyance — first, the father wanted the property back; second, *Page 111 
the father would give $3,000 for a release; third, he wanted all his children to share in the property. All of these theories cannot, of course, be true.
Twelve days after the recording of this deed the parties were married, and it appears from the evidence, and agreed by counsel, that at that time Helen, the second wife, had been dead for nearly two years. It also appears that August died about a year after this date.
The complainant contends that she married August Wildeman on his assurance that he was the owner of this property and that she would be taken care of from its proceeds as long as she lived.
He died without a will, and, therefore, unless he had an equitable estate in this property, her dower could not attach.
The claim of the defendants is that the deed, having been made to Walter to defeat the dower right of the second wife, Helen, was a fraud participated in by the complainant, or at least with her knowledge, and that she cannot now come into equity to have the deed reformed.
The children claim that they did not know that their father contemplated a third marriage, although Walter admits that he went to see a Mrs. Samuels to ask her to use her good offices with the complainant in persuading her to marry his father. And there is also evidence that the complainant returned to August Wildeman's house and lived there a month or two before the marriage.
I do not think that the question of the alleged fraud upon Helen, the second wife, is of importance, because at her death before her husband any right she may have had in the property ceased. Neither do I think that the defendant's contention that the promise of August Wildeman to marry the complainant is void, because it was made during the lifetime of the second wife. The reason that I do not attach importance to this contention is that it is my belief that the promise to marry was renewed after Helen's death, and, therefore, a new contract came into being, which was entirely valid irrespective of any invalidity which might attach to a promise made during the lifetime of another wife. *Page 112 
The authorities are ample to sustain the proposition that a wife may file a bill in equity to set aside or reform conveyances made by her husband in anticipation of his marriage and in an effort to defeat the right of the wife. I will cite a few such cases.
In Smith v. Smith, 6 N.J. Eq. 515, a bill was filed by the widow showing that previous to her marriage her husband owned land; that before she consented to marry him he told her he had houses in Trenton; that if she would marry him she would always have a good home. Relying on this, and not knowing that he had alienated the property, she married him.
The chancellor, on page 521, said:
"On the day of the marriage between the complainant and her late husband, and just before the marriage, he, without the knowledge of the intended wife, for the consideration of one dollar, conveyed certain real estate to trustees, in trust for his own use during his life, and, after his death, in trust to receive the rents and pay them to his daughter Mary, a daughter by a former wife, during her life, and, after her death, in trust for his three sons.
"I cannot doubt, on the evidence in the case, that the object of the conveyance was to defeat the complainant of the right she would acquire in his estate by the marriage. The other ground or reason now set up for the making of the conveyance, namely, the providing for his imbecile daughter after his death, was not, it appears to me, the real motive.
"I am of the opinion that a voluntary conveyance by a man, on the eve of his marriage, unknown to the intended wife and made for the purpose of defeating the interest which she would acquire in his estate by the marriage, is fraudulent as against her. I see no sound distinction between this case and the like conveyance by a woman under like circumstances. Decree for complainant."
In Brown v. Brown, 82 N.J. Eq. 40, Chancellor Walker reviews the cases on this point and cited Smith v. Smith. He says: *Page 113 
"By the common law a widow was entitled to dower in all the lands whereof her husband was seized in fee-simple at any time during coverture. Our statute enlarges the right, and endows her of all lands whereof her husband `or any other to his use,' was seized of an estate of inheritance at any time during coverture.Comp. Stat. p. 2043.
"The doctrine of courts of equity is that equitable estates are considered to all intents and purposes as legal estates.Cushing v. Blake, 30 N.J. Eq. (3 Stew.) 689.
"In Mershon v. Duer, 40 N.J. Eq. (13 Stew.) 333, and inRadley v. Radley, 70 N.J. Eq. (4 Robb.) 248, a widow's right of dower in lands held by another in trust for her husband was affirmed.
"In re Alexander, 53 N.J. Eq. (8 Dick.) 96, Vice-Chancellor Green, without attempting to define inchoate right of dower, cites cases showing the manner in which it has been entertained by various jurisdictions, and concludes upon the authority of Wheeler v. Kirtland, 27 N.J. Eq. (12 C.E. Gr.)534, `that it is an interest in the land from the time of the seizin of the husband is the law in this state.'
"That a wife, by reason of her inchoate right of dower, has such an interest in her husband's lands which a court of equity will protect, has frequently been asserted.
"In Wheeler v. Kirtland, supra, the property of the husband was condemned for public use, and upon a bill filed by the wife, it was held that she, by reason of her inchoate right of dower in the land, had an interest in the award which equity would secure to her.
"In Petty v. Petty, 4 B. Monr. 215, the wife filed a bill a few days after her marriage, to set aside a conveyance made by her husband in anticipation of the marriage and in fraud of the wife's rights. The court decreed the conveyance void as against her right, and directed a reconveyance to her of one-third for life to be enjoyed by her after her husband's death. In this case it was held that the inchoate right of dower of the wife was such an interest as to entitle her to the protection of a court of equity. *Page 114 
"In Burns v. Lynde, 6 All. 305, a deed in which it was made to appear that the wife joined with her husband was set aside as against her inchoate right of dower.
"In Madigan v. Walsh, 22 Wis. 501, it was held that an inchoate right of dower is such an interest in the land as will enable the wife to maintain an action to establish such a contingent right, and remove a cloud fraudulently intended to be put upon it.
"In Clifford v. Kampfe, 147 N.Y. 383, it was held that `the inchoate right of dower is a valuable, subsisting, separate and distinct interest which is entitled to protection, and for which the wife may maintain a separate action.' In this case a deed as against the wife's interest was set aside at her instance as a forgery.
"In Buzick v. Buzick, 44 Iowa 259, a sheriff's sale to the husband's son, procured by the fraudulent conduct of the husband, was set aside as against the wife's inchoate right of dower.
"In Smith v. Smith, 6. N.J. Eq. (2 Halst.) 515, a widow was awarded dower in lands which her husband conveyed just before marriage, and in fraud of her rights.
"In re Turner v. Kuehnle, 70 N.J. Eq. (4 Robb.) 61, a demurrer was overruled to a bill filed by a widow for dower in lands which her husband caused to be fraudulently sold under a foreclosure sale to which she was a party. The difference between the bid and the value of the property was paid by the purchaser to the husband, and in overruling the demurrer Vice-Chancellor Pitney said that the fraudulent conduct of the husband could not derpive a wife of her inchoate right of dower.
"It is the common practice of this court to conserve the wife's inchoate right of dower in the surplus moneys in mortgage foreclosures and in the husband's dividends of the sale of lands in partition suits.
"The equitable fee in the land involved in this suit is in the husband. He paid the purchase price. Cutler v. Tuttle,19 N.J. Eq. (4 C.E. Gr.) 549. In this estate the complainant has an inchoate right of dower. *Page 115 
"None of the foregoing cases deal with the exact point raised on this motion. Some sustain the widow's dower in lands held in trust for her husband, while others hold that a wife may maintain an action to protect her inchoate right of dower in lands, the legal title of which was in her husband, and of which right it was attempted to deprive her by lawful means. Upon principle supported by the above authorities, it seems to me that a wife's inchoate right of dower in lands held by another to the use of her husband, may be secured to her by a bill in equity. Unless the wife acts diligently the holder of the legal title may convey the estate to an innocent purchaser, and thus estop her from claiming her dower when it should be consummate."
See, also, American Surety Co. v. Conway, 88 N.J. Eq. 370,
and Pinkinson v. Pinkinson, 93 N.J. Eq. 583.
Under these decisions, and carefully considering the admitted facts in the case, it is my opinion that August Wildeman persuaded this complainant to marry him on the understanding that he had property from which she might reasonably expect income and support during her lifetime; that the property was equitably his although the legal title was in his son, Walter, and that he endeavored to get back the legal title of the property in order to fulfill his promise made to the complainant.
I shall therefore advise a decree that the complainant is entitled to have her dower assigned out of the lands in question. The amount of this dower interest should be fixed by a special master, whom I will appoint, when counsel submit to me the form of the decree. *Page 116